# EXHIBIT A

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

KYDIA INCORPORATED,

 an Illinois corporation,


                   Plaintiff,

v.

OBENTO LIMITED (d/b/a Chinese Menu
Online), a Hong Kong business entity; AMANDA
CHAN (a/k/a Tsz Mei Amanda Fulton Chan) (陈
子薇), an individual,

                  Defendants.

_____

OBENTO LIMITED

                 Counter-Plaintiff

v.

KYDIA INCORPORATED,

                 Counter-Defendant

**CASE NO.  2:18-CV-01217-PP**

**JUDGE PAMELA PEPPER**

## KYDIA INCORPORATED'S RESPONSES TO OBENTO LIMITED AND AMANDA CHAN'S FIRST SET OF INTERROGATORIES

    Kydia Incorporated ("Kydia") hereby responds to Obento Limited ("Obento") and

Amanda Chan's First Set of Interrogatories. Kydia will not provide any information protected by

any privilege or the attorney work-product doctrine. Kydia incorporates into each response

below a general objection to the request to the extent that it seeks information protected by the

attorney-client privilege, any other privilege, or the attorney work-product doctrine.

1

## GENERAL OBJECTION TO THE NUMBER OF INTERROGATORIES

Many of the interrogatories contain "discrete subparts" under Federal Rule of Civil Procedure 33(a)(1). The total number of interrogatories propounded, when properly counting discrete subparts of all interrogatories as separate interrogatories, is at least **68**. Kydia objects that Obento and Amanda Chan, and their first set of interrogatories, are in violation of Federal Rule of Civil Procedure 33(a)(1)'s limit on the number of interrogatories that may be propounded without leave of Court or stipulation of the parties. Federal Rule of Civil Procedure 33(a)(1) states, "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." By providing responses, Kydia is not waiving any objection to this violation regarding the maximum number of interrogatories.

## RESPONSES

**INTERROGATORY NO. 1:**

Identify each individual, other than Your counsel who has appeared in this case, who provided information in answering these interrogatories, giving their full name, employer, title, and current work address, email address, and phone number.

**RESPONSE TO INTERROGATORY NO. 1:**

Leon Chen, CEO of Kydia Inc. He may be contacted through the undersigned counsel. Kydia's contact information is: 10400 W Higgins Rd, #205, Rosemont, IL 60018, info@beyondmenu.com, 630-776-3590.

**INTERROGATORY NO. 2:**

Describe how Chan or Xie acquired or misappropriated, prior to the end of their employment with IOO or You, any trade secrets belonging to IOO, including customer lists,

2

commission and business structures, statistics on customers, market projections and menu data. In answering, please identify from whom, when, and how You first learned that Chan or Xie had acquired or misappropriated IOO's customer lists. Please also identify all steps taken by You to have Chan and Xie cease use of the IOO customer list. Please further identify all reasons why you contend Chan or Xie knew the IOO customer list was a "trade secret" and that their misappropriation of the list was willful and malicious, as alleged in Paragraphs 69, 70, and 90 of Your Complaint.

**RESPONSE TO INTERROGATORY NO. 2:**

Kydia objects that this interrogatory is compound and constitutes at least 5 discrete subparts: (1) how Chan and Xie acquired the trade secret information, (2) how they subsequently misused or disclosed the trade secrets, (3) how Kydia first learned of the misappropriation of the customer list, (4) identifying what Kydia did to have Chan and Xie cease use of the customer list, and (5) identifying all evidence that Chan and Xie knew that the customer list constituted trade secrets.

Kydia objects that the interrogatory calls for speculation and assumes knowledge of facts specifically within the knowledge of Defendants. Defendants know the specifics of how they acquired and used the trade secrets better than anyone else could possibly know. Kydia objects that there is a lack of proportionality under Federal Rule of Civil Procedure 26(b)(1).

As to how Chan or Xie acquired trade secrets belonging to IOO, they were paid employees of IOO and had regular access to the trade secrets, including the customer list and confidential contact information, in order to conduct their employment duties. In furtherance of protecting the trade secrets, IOO and Kydia requested that Amanda Chan sign and enter into the Work for Hire Agreement with IOO of August 19, 2015 (Exhibit 1 to the First Amended

3

Complaint), which Amanda Chan in fact signed. Section 3 of the Work for Hire Agreement states, "**Confidentiality.** Developer [Amanda Chan] acknowledges that [she] acquired information and materials from Company about Company's business, products, programming techniques, work, customers, and suppliers; all of which, collectively, are considered trade secrets and confidential property of the Company. Developer [Amanda Chan] agrees to hold such confidential information in confidence and not to disclose it to others. Developer [Amanda Chan] further agrees to take all action reasonably necessary to protect the confidential information." Due to their access to the trade secret information during their employment, Chan and/or Xie would simply have to download the information during that time. Defendants are the ones who know all of the specific details.

As to how Chan or Xie misappropriated the trade secrets, they did so through acquiring the trade secrets for an improper purpose, including to compete against IOO and Kydia, and by subsequently using the trade secret information without IOO or Kydia's authorization in order to compete against Kydia and IOO, help build a company that was a copy of Kydia and IOO, and to solicit Kydia and IOO customers. Less than one month after Amanda Chan signed the Work for Hire Agreement, and while Amanda Chan and Tao Xi were still working for IOO, on September 16, 2015, Obento Limited, a competing business with IOO and Kydia, was incorporated in Hong Kong. Defendants are the ones who know all of the specific details about their misappropriation.

As to how Kydia learned of the trade secret misappropriation, in the same vicinity of time as Amanda Chan signed the Work for Hire Agreement, Defendants launched their competing Chinese Menu Online business as quickly became apparent openly on the internet. Chinesemenuonline.com was registered on August 31, 2015, and by October 30, 2015, Kydia had sent Amanda Chan a cease and desist letter regarding use of trade secrets.

4

As to the steps Kydia and IOO took to have Chan and Xie cease use of the customer list, on October 30, 2015, seeing that Defendants kept soliciting and signing up existing Kydia/IOO customers in numbers that could not be explained through proper means, Kydia/IOO's attorney sent a cease and desist letter to Amanda Chan via e-mail on October 30, 2015, and asked her to immediately stop the trade secret violations. Inside the letter, Kydia's attorney listed 6 pre-existing Kydia customers for whom Kydia was informed that Obento provided services identical to the services provided by Kydia: (1) Chinatown-Bedford, TX; (2) Magical Rice-Boca Raton, LA; (3) China Wok-Baltimore, MD; (4) Fongling–Diamond Bar, CA; (5) Ju Yuan–Minneapolis, MN; and (6) Imperial Wok – Rochester, MN. The letter also demanded Amanda Chan "If you do not immediately discontinue providing services to the above identified customers, and any other Kydia customers to whom you are providing services and do not cease soliciting the Kydia's customers, a lawsuit will be commenced against you, by which Kydia will immediately seek a temporary restraining order in District Court against you and will also bring a cause of action against you for breach of contract and tortious interference with a contract seeking monetary damages to be proved at trial." Kydia also has filed this lawsuit.

As to why the customer list and customer information are trade secrets, they derived independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means and it was the subject of efforts that were reasonable under the circumstances to maintain its secrecy (such as by having Amanda Chan sign the Work for Hire Agreement with the confidentiality provision). Kydia has approximately 16,000 restaurant customers of its services. IOO had over 1,000 restaurant customers in 2015. Kydia has and had (and IOO had) private contact information for most of their customers such as the cell phone number, e-mail address, and fax numbers of restaurant owners or managers. The large

number of customers, the amount of data, and the unavailability of private contact information made it implausible for someone to obtain or compile this information through proper means.

Furthermore, it is easier to solicit a potential customer if one can contact him or her personally and has information regarding the potential customer that can be used in the pitch. Use of Kydia's confidential customer information, such as sales and revenue information, would also enable Defendants to know which customers were particularly attractive to solicit and better target their solicitation efforts.

As to how Chan and Xie knew that the information they took were trade secrets, they are the ones who know this information best. That said, they were informed, Amanda Chan signed a written agreement, and it was obvious to any reasonable employee that this information was confidential, proprietary, and a trade secret.

**INTERROGATORY NO. 3:**

Identify all steps taken by IOO, prior to the end of Chan and Xie's respective employment with IOO or You, to secure its customer list, including commission amounts, customer rating scores, commission history, proposed business deals, market projections, and menu data. In answering, please identify all representatives of IOO who communicated protocols, guidelines, or procedures for securing the customer lists to IOO's freelance employees, when these communications were made, and how these communications were delivered. Also identify to which persons these protocols, guidelines, or procedures were communicated.

**RESPONSE TO INTERROGATORY NO. 3:**

Kydia objects that this interrogatory is compound and constitutes at least 2 discrete subparts: (1) identifying the steps to secure the various trade secrets, and (2) identifying specific

communications, specific protocols, and specific employees regarding various trade secrets. Kydia objects that there is a lack of proportionality under Federal Rule of Civil Procedure 26(b)(1).

Regarding efforts specific to Chan and Xie, they are in possession of the relevant information. Kydia had Amanda Chan sign a confidentiality agreement. Even though IOO/Kydia did not have formal companywide protocols, guidelines, and procedures for securing the customer lists to IOO's freelance employees, they would clearly know from how their work was done, the nature of the work they did, how the customer list and information were treated, how they were told to do their work and treat information, and from common sense and general business practice that all employees were required to protect the customer list (and other trade secrets) and could not use it or disclose it except for the benefit of Kydia in their employment.

**INTERROGATORY NO. 4:**

Identify each restaurant customer of IOO that chose Obento to manage its GMB listing as a result of Obento's use of IOO's customer list. In answering, please identify when IOO first started to manage the customer's GMB listing, when Obento took over management of the customer's GMB listing, whether that customer subsequently allowed IOO or You to again manage the customer's GMB listing, and any communications by the customer to IOO or You about why it was switching management of its GMB listing from IOO/You to Obento. Please also identify any complaints made by the customer to IOO or You about the service provided by You to the customer, including who made the complaint, who received the complaint, when the complaint was made, and any steps taken by You to rectify the complaint. Please further identify all economic, financial, or reputational damages You suffered, including lost revenue, as a result of Obento's use of IOO's customer list.

7

**RESPONSE TO INTERROGATORY NO. 4:**

Kydia objects that this interrogatory is compound and constitutes at least 5 discrete subparts: (1) identifying the historical control of GMB listings, (2) identifying communications from customers as to why they were switching management from IOO or Kydia to Obento, (3) identifying any complaints made by customers regarding IOO or Kydia's services, (4) identifying what steps were taken to address those complaints, and (5) identifying damages.

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden.

This interrogatory assumes that Kydia has more information reasonably available to it than it does. The interrogatory seeks information that would be known precisely, if by anyone, by Defendants. Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or management control over. Furthermore, Kydia objects that the interrogatory asks Kydia to speculate. For example, Kydia does not know particular customers' motivations or whether any consent was informed in any particular transfer of a GMB account to Obento.

There is no switching control of a particular restaurant customers' GMB listing between Kydia and Obento as asked by Defendants here in this Interrogatory. The GMB listings were strictly under Google's control. Anyone who tried to gain control of the GMB listing, whether a restaurant owner or an agent, has to follow Google's official procedures that are defined from Google to claim it.

**INTERROGATORY NO. 5:**

Identify each restaurant customer of IOO that chose to allow Obento to provide food ordering services for it as a result of Obento's use of IOO's customer list, but did not choose Obento to manage its GMB listing. In answering, please identify when Obento began providing food ordering services for that customer, all other online food ordering services that customer was working with in 2015 or 2016, and any communications by the customer to IOO or You about why it decided to work with Obento. Please also identify any complaints made by the customer to IOO or You about the service provided by You to the customer, including who made the complaint, who received the complaint, when the complaint was made, and any steps taken by You to rectify the complaint. Please further identify all economic, financial, or reputational damages, including lost revenue, You suffered as a result of Obento's use of IOO's customer list.

**RESPONSE TO INTERROGATORY NO. 5:**

Kydia objects that this interrogatory is compound and constitutes at least 6 discrete subparts: (1) identifying restaurants that fit the category and when Obento began services for them, (2) identifying other food ordering services the restaurants worked with, (3) identifying customer correspondence regarding why they chose to work with Obento, (4) identifying customer complaints, (5) identifying how customer complaints were addressed, and (6) identifying damages.

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden. Kydia objects that in the clause "complaints made by the customer to IOO or You about the service provided by You to the customer," the word "complaints" is vague and ambiguous. It is unclear what types of complaints are being referenced. A customer complaint

9

could be unrelated to Google or GMB and have nothing to do with the subject matter of this case.

This interrogatory assumes that Kydia has more information reasonably available to it than it does. Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or management control over. Additionally, Kydia and IOO did not learn the details of how particular restaurants were solicited. Kydia and IOO would not know if and when an Obento salesperson called a particular restaurant owner's cell phone number that Amanda Chan and Tao Xie acquired while working for IOO. Defendants are the ones who would know this information. Furthermore, Kydia does not know when Defendants started actually providing services to restaurants; this be in Defendants' possession. Also, the interrogatory calls for speculation. For example, it is unrealistic to think that restaurant owners were calling Kydia to explain why they signed up for Obento's online food ordering services. The restaurants would not have a reason to do so.

**INTERROGATORY NO. 6:**

Describe how much time IOO employees took and money IOO expended, prior to the end of Chan and Xie's employment with IOO or You, to develop IOO's customer list, including how it was able to obtain each restaurant owner's and/or manager's name, cell phone number, and private email address. In answering, please identify each employee of IOO who obtained a restaurant owner and/or manager's name, cell phone number, or private email address, including those restaurants for which that employee was responsible for obtaining all or part of the alleged "private contact information." Please also identify the amount of time and money expended by IOO to develop "private contact information," as alleged in Paragraph

10

16 of Your Complaint, for each restaurant identified in Paragraphs 4 and 5.

**RESPONSE TO INTERROGATORY NO. 6:**

Kydia objects that this interrogatory is compound and constitutes at least 3 discrete subparts: (1) identifying the time, resources, and money spent to develop the information, (2) identifying the techniques utilized to develop the information, and (3) identifying the specific information obtained by each employee.

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden.

Kydia does not know or have available the exact time and money expended for IOO employees to develop IOO's customer list, but knows that significant time and money, such as the cost of employing salespeople, were expended. IOO acquired approximately over 2,000 customers through business investments and services like other companies. Regarding market values related to customers, Grubhub and UberEats are owned by publicly traded companies and thus have publicly available data.

**INTERROGATORY NO. 7:**

Describe each instance when Obento or Chan pretended to be from or associated with You to trick restaurants into providing Google PIN numbers, as alleged in Paragraph 5 of Your Complaint. In answering, please identify how You learned of this communication, when You first learned of this communication, how You know the communication originated from Obento or Chan, and any steps taken by You to discourage Obento or Chan from engaging in similar communications in the future.

**RESPONSE TO INTERROGATORY NO. 7:**

11

Kydia objects that this interrogatory is compound and constitutes at least 3 discrete subparts: (1) describing instances of trickery and the evidence for that trickery, (2) describing how Kydia learned of the instances of trickery, and (3) identifying steps taken to deter future behavior.

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden.

As to steps taken to discourage Obento and Chan, Kydia and IOO sent Amanda Chan a cease and desist letter on October 30, 2015. Kydia also filed this lawsuit.

For the remaining subparts of the interrogatory, the interrogatory supposes Kydia has more information than it does. Kydia would not know and does not know what conversations and private communications Obento and Chan had with restaurants and what transpired in Obento and Chan's conversations and private communications with restaurants. Defendants would be the ones who know this information. Second, Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or management control over.

Kydia directs Defendants to the customer affidavits filed by Kydia on November 16, 2018 and Exhibits 2, 3, and 4, of the First Amended Complaint.

**INTERROGATORY NO. 8:**

Describe each instance when Obento or Chan contacted a customer of Yours to spread false information about You so the customer would instead do business with Obento. This

includes the communications alleged in Paragraphs 47 and 48 of Your Complaint. In answering, please identify how You learned of this communication, when You first learned of this communication, how You know the communication originated from Obento or Chan, and any steps taken by You to discourage Obento or Chan from engaging in similar communications in the future. Please also identify each instance of a false or misleading statement made by Obento since 2017 that forms the basis of the Fourth Cause of Action in Your Complaint.

**RESPONSE TO INTERROGATORY NO. 8:**

Kydia objects that this interrogatory is compound and constitutes at least 4 discrete subparts: (1) identifying all false communications to customers and Kydia's evidence thereof, (2) identifying how Kydia learned of the false communications, (3) steps taken to deter future behavior, and (4) identifying all false and misleading statements regarding the Fourth Cause of Action.

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden.

As to steps taken to discourage Obento and Chan, Kydia and IOO sent Amanda Chan a cease and desist letter on October 30, 2015. Kydia also filed this lawsuit.

For the remaining subparts of the interrogatory, the interrogatory supposes Kydia has more information than it does. Kydia would not know and does not know what conversations and private communications Obento and Chan had with restaurants and what transpired in Obento and Chan's conversations and private communications with restaurants. Defendants would be the ones who know this information.

In Paragraphs 47 and 48 of Kydia's Complaint, Kydia provided concrete evidence as displayed in Exhibits 2, 3, & 4. For Exhibit 2, the documents clearly show that they were faxed from "CHINESE MENU ONLINE." It is apparent that Exhibits 2 through 4 are from Chinese Menu Online. If Obento is challenging this conclusion, Obento would be in the position to, and should be expected to, provide discovery material to prove otherwise, providing specificity as to what is being challenged and how. Therefore, Kydia directs Defendants to the customer affidavits filed by Kydia on November 16, 2018 and Exhibits 2, 3, and 4, of the First Amended Complaint.

**INTERROGATORY NO. 9:**

Identify each restaurant customer of Yours, the access for whose GMB listing was transferred by Corpuz to Obento between October 2017 and April 2018. In answering, please identify the date You began managing the customer's GMB listing, when the transfer was completed, whether the customer subsequently allowed You to resume managing its GMB listing after the transfer was complete, and whether You had written confirmation that You were authorized to manage the customer's GMB listing prior to the transfer being completed. Please further identify all economic, financial, or reputational damages, including lost revenue, You suffered as a result of the transfer of the access for these restaurant customers' GMB listings. This includes identifying all customers of Yours who were confused by management or control of their GMB listing being switched from You to Obento. This also includes how alleged confusion from management or control of their GMB listing being switched from You to Obento caused Google to file suit against You, as alleged in Paragraph 49 of Your Complaint.

**RESPONSE TO INTERROGATORY NO. 9:**

Kydia objects that this interrogatory is compound and constitutes at least 6 discrete

subparts: (1) the list of GMB accounts Corpuz transferred and when, (2) when Kydia had begun

managing the GMB listings, (3) which GMB accounts Kydia reobtained control of after Obento

had taken control through Corpuz, (4) identifying for which listings Kydia had written

confirmations, (5) identifying the damages from the transfers, and (6) identifying customer

confusion caused from the transfers. Kydia objects that there is a lack of proportionality,

relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1).

Kydia objects on the grounds of overbreadth and undue burden. Kydia objects that the

interrogatory seeks Kydia to speculate. Kydia objects that the interrogatory seeks the

identification of information and documents that are within Defendants' control but not Kydia's.

Kydia simply cannot provide a proper substantive response to this interrogatory even if it

took all reasonable efforts to do so. Kydia did not know, does not know, and cannot learn

without information being provided to Kydia, when and how Obento started managing particular

restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or

management control over. Kydia does not know the extent of the GMB accounts transferred by

Corpuz. (For information known on certain transfers, see Exhibit 1 of the Fan Li declaration filed

in support of pretrial relief.) Kydia has requested that Defendants provide the list of the GMB

accounts that were transferred by Corpuz to Obento, and Defendants have yet to provide this

information.

Defendants are in the position to know which GMB accounts Corpuz clandestinely

transferred to Obento at the behest and payment of Defendants and when the transfers happened.

Kydia did not know that Corpuz was planning with Defendants to steal Kydia GMB listings; if

Kydia had known, Kydia would have taken action. Kydia cannot calculate damages without

learning the extent of the wrongdoing and the identity of the listings transferred.

Regarding Google, The back and forth of claiming one particular restaurant's GMB listing has cost Google resources. Additionally, the Corpuz transfers violated Google's terms of service.

**INTERROGATORY NO. 10:**

Identify each restaurant customer of Yours that chose Obento to manage its GMB listing as a result of Corpuz providing Obento or Chan Your customer list. In answering, please identify the date You began managing the customer's GMB listing, when Corpuz transferred to Obento Your customer list, whether the customer subsequently allowed You to resume managing its GMB listing after the restaurant allowed Obento to manage its GMB listing, and whether You had written confirmation that You were authorized to manage the customer's GMB listing prior to the transfer of the customer list being completed. Please further identify all economic, financial, or reputational damages You suffered as a result of the transfer of Your customer list.

**RESPONSE TO INTERROGATORY NO. 10:**

Kydia objects that this interrogatory is compound and constitutes at least 5 discrete subparts: (1) the list of restaurants that transferred GMB control as a result of the transfer of the customer list and when Kydia had begun managing this subset of GMB listings, (2) the date Corpuz transferred the customer list, (3) which GMB accounts Kydia reobtained control of after Obento had taken control, (4) identifying for which listings Kydia had written confirmations, and (5) identifying the damages from the transfer of the customer list.

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and

undue burden. Kydia objects that the interrogatory seeks Kydia to speculate. Kydia objects that the interrogatory seeks the identification of information and documents that are within Defendants' control but not Kydia's.

Kydia simply cannot provide a proper substantive response to this interrogatory even if it took all reasonable efforts to do so. Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or management control over. Kydia does not know the extent of the GMB accounts transferred by Corpuz. Kydia has requested that Defendants provide the list of the GMB accounts that were transferred by Corpuz to Obento, and Defendants have yet to provide this information.

Defendants are in the position to know which GMB accounts Corpuz clandestinely transferred to Obento at the behest and payment of Defendants and when the transfers happened. Kydia did not know that Corpuz was planning with Defendants to steal Kydia GMB listings; if Kydia had known, Kydia would have taken action. Kydia cannot calculate damages without learning the extent of the wrongdoing and the identity of the listings transferred.

The interrogatory calls for speculation as the motives of customers. Kydia was not present for any solicitation of customers. It is unrealistic to expect that customers would report to Kydia that they were switching their business to Obento or control over their GMB account to Obento and why they were doing so. Furthermore, customers would likely not know whether Kydia's customer list was used as part of Obento's solicitation of them.

**<u>INTERROGATORY NO. 11</u>:**

Describe how Corpuz provided Obento or Chan with Your customer list, including how Obento or Chan were able to access and review Your customer list in 2017 or 2018.

**RESPONSE TO INTERROGATORY NO. 11:**

Kydia objects that the interrogatory seeks Kydia to speculate. Kydia objects that the interrogatory seeks the identification of information and documents that are within Defendants' control but not Kydia's.

Corpuz worked for Kydia at the relevant time and, in the scope of his work duties, Corpuz had access to Kydia computer systems with a Kydia employee login account. With this login, Corpuz could easily access Kydia's customer list. It is undisputed that Defendants paid Corpuz to transfer Kydia-controlled GMB listings to Defendants and that Corpuz did in fact transfer Kydia-controlled GMB listings to Defendants. See Defendants' Answer, doc. no. 50, pp. 24-25. It follows that Defendants had a list of Kydia customer and GMB account information.

Defendants know the specifics of how Corpuz provided information to them, and Defendants and Corpuz did not share their secret plans with Kydia making Kydia unable to provide a more detailed response.

**INTERROGATORY NO. 12:**

With regard to the allegations in Paragraph 39 of Your Complaint, identify the restaurants whose GMB listings Obento or Chan were able to take control of without their knowledge or consent, including how they were able to do so.

**RESPONSE TO INTERROGATORY NO. 12:**

Kydia objects on the grounds of overbreadth and undue burden. Kydia objects that the interrogatory seeks Kydia to speculate. Kydia objects that the interrogatory seeks the identification of information and documents that are within Defendants' control but not Kydia's.

Paragraph 39 of the First Amended Complaint is in the section entitled "Chan and Xie Misappropriate Trade Secret[s] and Form Obento Limited," and alleges, "Without the customers'

knowledge or consent, Chan, Xie, and Obento Limited then redirected the Google My Business listing of those customers from a BeyondMenu webpage in which food orders were taken by BeyondMenu to a Chinese Menu Online site that Chan, Xie, and Obento Limited secretly created for the customers and that took food orders. Chinese Menu Online charged these restaurants a commission for each food order. This enriched Chan, Xie, and/or Obento Limited over $75,000 in profit, all at the expense of Instant Online Orders/Kydia, including from Wisconsin customers and Illinois customers."

Kydia simply cannot provide a proper substantive response to this interrogatory even if it took all reasonable efforts to do so. Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or management control over. Kydia and Instant Online Orders were not present for communications between Defendants and customers and does not know the specifics of how Defendants solicited each particular customer.

**INTERROGATORY NO. 13:**

Identify all customers of Yours who communicated to You that Obento provided "poorer services," as alleged in Paragraph 49 of Your Complaint, or "inferior services" or "inferior websites," as alleged in Paragraph 54 of Your Complaint.

**RESPONSE TO INTERROGATORY NO. 13:**

Kydia does not have a list of customers that communicated with Kydia about Obento's "poor services" or "inferior services" or "inferior websites." Kydia received feed-back and observations from restaurant-customers that CMO's websites are not mobile friendly, and there is no live person who takes phone calls when one calls CMO's customer support phone line,

(888) 766-8882. Kydia does not have a record of those calls.

**INTERROGATORY NO. 14:**

Identify all steps taken by You following Corpuz being caught transferring GMB accounts to resecure or repair Your computer systems or networks, recreate any corrupted or insecure data, or rebuild computer files. In answering, please identify all amounts paid by You to resecure, repair, recreate, or rebuild, including to whom these amounts were paid, when they were paid, and the nature of the work performed by these persons.

**RESPONSE TO INTERROGATORY NO. 14:**

Kydia objects that this interrogatory is compound and constitutes at least 2 discrete subparts: (1) the work and steps taken to re-secure, repair, and recreate, and (2) the amounts spent to whom and when.

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden. Kydia objects to the extent that the interrogatory seeks trade secrets or other confidential information.

Kydia had to devote significant time and efforts in determining that Corpuz was the source of the GMB transfers, as discussed in the Declaration of Fan Li filed with the motion for preliminary injunction.

**INTERROGATORY NO. 15:**

Identify Your employees or contractors who worked outside of the United States between 2016 and present and had communications with Google about a restaurant whose GMB listing Obento managed at any time. In answering, please identify the date each person began working for You; the date the person stopped working for You; the team, division, or unit the

person was on; who the person was supposed to report to; the person's job description; the bases for their compensation, retention, and promotion; any instructions, guidelines, or protocols the person was expected to follow in its communications with Google; and all email addresses those persons used to communicate with Google.

**RESPONSE TO INTERROGATORY NO. 15:**

Kydia objects that this interrogatory is compound and constitutes at least 4 discrete subparts: (1) identifying the employees outside the United States who had communications with Google, the dates of their employment, their position, and job description, (2) identifying the bases for their compensation, retention, and promotion, (3) identifying the instructions, guidelines, or protocols for communications with Google, and (4) identifying the e-mail addresses used to communicate with Google.

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden. Kydia objects that the Interrogatory is overbroad, especially as it is not limited to information relevant to Defendants, the lawsuit, and the relevant periods of time.

This interrogatory assumes that Kydia has more information reasonably available to it than it does. Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or management control over. As is generally the case, Google would not inform Kydia who controls a GMB listing that Kydia does not control, and Google would not be obligated to do so.

**INTERROGATORY NO. 16:**

Identify all Chinese Food Restaurant customers of Yours, whose GMB listing You manage or managed between 2016 and present, with whom You have a written agreement or contract allowing You to manage or control the customer's GMB listing.

**RESPONSE TO INTERROGATORY NO. 16:**

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden. Kydia objects to the scope of the interrogatory.

Without conceding the relevance regarding the identity of any of Kydia's customers, the identity of Kydia's customers who never did business with Obento is clearly not relevant to the allegations at issue in this case. Similarly, without conceding the relevance regarding the relevance of the identity of any GMB accounts that Kydia has controlled, the identity of any GMB accounts of restaurants that never did business with Obento is clearly not relevant to the allegations at issue in this case. As to restaurants which Obento has had GMB control, Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or management control over.

Kydia objects to the use of the terms "agreement" and "contract" as vague and ambiguous. Kydia has received consents to manage the GMB accounts it has controlled, but Google policy has not required a specific form of written "agreement" or "contract" for third-party GMB control.

During the alleged timeframe of the Counterclaim, it was not Kydia's practice to obtain a signed "agreement" or "contract" to memorialize the business relationship regarding GMB.

**INTERROGATORY NO. 17:**

Identify each restaurant that was the subject of a communication between Google and Your employee or contractor, made between 2016 and present, in which Your employee or contractor challenged another business' control or management of the restaurant's GMB listing. In answering, please identify whether You subsequently controlled or managed that restaurant's GMB listing and whether you had a written agreement or contract allowing You to manage or control the customer's GMB listing.

**RESPONSE TO INTERROGATORY NO. 17:**

Kydia objects that this interrogatory is compound and constitutes at least 3 discrete subparts: (1) identifying the restaurants that were subject of certain types of communications, (2) determining whether there was subsequent GMB control, and (3) and identifying whether there were written agreements with the restaurants.

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden. Kydia objects to the scope of the interrogatory.

Kydia's actions and communications relating to restaurants that did not do business with Obento are irrelevant to this action and are not at issue. Without conceding the relevance regarding the identity of any of Kydia's customers, the identity of Kydia's customers who never did business with Obento is clearly not relevant to the allegations at issue in this case. Similarly, without conceding the relevance regarding the relevance of the identity of any GMB accounts that Kydia has controlled, the identity of any GMB accounts of restaurants that never did business with Obento is clearly not relevant to the allegations at issue in this case. As to restaurants which Obento has had GMB control, Kydia did not know, does not know, and cannot

learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or management control over.

Kydia objects to the use of the terms "agreement" and "contract" as vague and ambiguous. Kydia has received consents to manage the GMB accounts it has controlled, but Google policy has not required a specific form of written "agreement" or "contract" for third-party GMB control. During the alleged timeframe of the Counterclaim, it was not Kydia's practice to obtain a signed "agreement" or "contract" to memorialize the business relationship regarding GMB.

Defendants misunderstand Kydia's actions. Kydia must go through the restaurant to obtain authorization and go through the Google technical procedures, and this is not in dispute. (Obento could bypass this with the Corpuz GMB transfers only because Obento had access to Corpuz who was a Kydia insider with access to the Kydia-controlled accounts.) If an account that Kydia is supposed to be in control of falls under the control of another third-party, Kydia will attempt to reobtain control by contacting the restaurant. Kydia does call Google and seek advice for any technical issues that Kydia may encounter. Kydia does not track such calls and results. A restaurant's GMB listing ownership is assigned to the business owner or a third-party agent by following Google GMB claiming procedures.

**<u>INTERROGATORY NO. 18</u>:**

Identify Your employees or contractors who requested from Google between 2017 and present a Chinese Food Restaurant's login and password for the restaurant's GMB listing. In answering, please identify whether You subsequently controlled or managed that restaurant's GMB listing and whether you had a written agreement or contract allowing You to manage or

control the customer's GMB listing. Please also identify each email addresses those persons used to communicate with Google.

**RESPONSE TO INTERROGATORY NO. 18:**

Kydia objects that this interrogatory is compound and constitutes at least 3 discrete subparts: (1) identifying the employees or contractors who requested logins and passwords and their e-mail addresses, (2) identifying GMB management control information, and (3) identifying whether there was a written "contract" or "agreement."

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden.

Kydia objects that the first sentence of the interrogatory is vague and ambiguous and unduly confusing, and the rest of the interrogatory requires an understanding of what is being asked in the first sentence. Kydia does not know what the answer is.

Further, Kydia's actions and communications relating to restaurants that did not do business with Obento are irrelevant to this action and are not at issue. Without conceding the relevance regarding the identity of any of Kydia's customers, the identity of Kydia's customers who never did business with Obento is clearly not relevant to the allegations at issue in this case. Similarly, without conceding the relevance regarding the relevance of the identity of any GMB accounts that Kydia has controlled, the identity of any GMB accounts of restaurants that never did business with Obento is clearly not relevant to the allegations at issue in this case. As to restaurants which Obento has had GMB control, Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB

ownership or management control over.

Also, Kydia objects to the use of the terms "agreement" and "contract" as vague and ambiguous. Kydia has received consents to manage the GMB accounts it has controlled, but Google policy has not required a specific form of written "agreement" or "contract" for third-party GMB control. During the alleged timeframe of the Counterclaim, it was not Kydia's practice to obtain a signed "agreement" or "contract" to memorialize the business relationship regarding GMB.

**INTERROGATORY NO. 19:**

Identify all facts that support or undermine Your first affirmative defense based on statutes of limitations.

**RESPONSE TO INTERROGATORY NO. 19:**

Kydia objects that this interrogatory is compound and constitutes at least 6 discrete subparts as Obento has brought 6 separate claims for relief.

For the First Claim for Unfair Competition, it appears that there is no alleged wrongdoing prior to 2017 per Paragraph 14 of the Counterclaim. However, Obento has not confirmed that this is the case. At this time, Kydia cannot point to evidence that there are allegations of wrongdoing outside of the statute of limitations for Obento's First Claim beyond uncertainty regarding the allegations.

For the Second Claim for Tortious Interference with Contract, it is unclear which state or states' laws Obento is suing under or which state or states' laws would apply to the claims. The Second Claim references 2015 at Paragraph 37 of the Counterclaim. It is Kydia's position that there are states where a 2015 tortious interference with contract claim would be time-barred in 2019.

For the Third Claim for Tortious Interference with Prospective Economic Advantage, it appears that the allegations may date back to 2015 per Paragraph 37 of the Counterclaim. It is Kydia's position that there are states where 2015 tortious interference with prospective economic advantage claims would be time-barred.

For the Fourth Claim for Violations of the Illinois Consumer Fraud and Deceptive Business Practice Act, Obento has not confirmed whether there are no allegations of violations prior to 2017 as suggested by Paragraph 14 of the Counterclaim. Paragraph 37 of the Counterclaim references 2015, and it is Kydia's position that any alleged violations from 2015 would be time-barred under 815 ILCS 505/10a(e).

For the Fifth Claim for Violation of the California UCL, the Answer and Counterclaim seem to foreclose allegations of wrongdoing more than four years prior to the filing of the Counterclaim.

For the Sixth Claim for Unjust Enrichment, it is unclear which state or states' laws Obento is suing under or which state or states' laws would apply to the claims. Paragraph 37 of the Counterclaim references 2015.

**INTERROGATORY NO. 20:**

Identify all facts that support or undermine Your second affirmative defense based on laches.

**RESPONSE TO INTERROGATORY NO. 20:**

Kydia objects that this interrogatory is compound and constitutes at least 6 discrete subparts as Obento has brought 6 claims for relief.

Kydia does not know the specifics of all allegations against it in order to be able to foreclose the possibility of this defense being applicable.

**FORM INTERROGATORY NO. 21:**

Identify all facts that support or undermine Your fourth affirmative defense that contracts between Obento and its customers were the product of fraud, did not involve informed consent, or were invalid or unenforceable.

**RESPONSE TO INTERROGATORY NO. 21:**

Kydia objects that the interrogatory is compound and contains discreet subparts. It asks for evidence covering innumerable areas. Kydia objects that the use of the word "undermine" is vague, ambiguous, and unclear.

Kydia has received calls and communications from customers that indicate that Obento took control of their GMB listings without the knowledge of the restaurants. See the declarations filed in support of Kydia's motion for preliminary injunction. Chinese Menu Online appears to have poached an inordinate amount of its customers from Kydia. Defendants admit to paying Zemver Corpuz of Kydia to clandestinely transfer GMB listings from Kydia. Amanda Chan and Tao Xie started Obento while still working for Instant Online Orders. Obento engaged in the correspondence that Defendants produced as Obento/Chan 000011-22.

DATED:  August 30, 2019        Respectfully submitted,

  /s/ *Scott M. Lesowitz*
Scott M. Lesowitz
California Bar Number: 261759
     (Fully admitted to the Eastern District of
     Wisconsin)
Syverson, Lesowitz & Gebelin LLP
8383 Wilshire Boulevard, Suite 520
Beverly Hills, California 90211
Phone: 310-341-3076
Fax: 310-341-3070
E-mail: scott@syversonlaw.com
Attorneys for Plaintiff
Kydia Incorporated

29

## **VERIFICATION**

I, Leon Chen, have read the above document entitled, "KYDIA INCORPORATED'S RESPONSES TO OBENTO LIMITED AND AMANDA CHAN'S FIRST SET OF INTERROGATORIES." I know the contents of the document. I am a corporate office of Kydia Inc., and I empowered to verify the document on behalf of Kydia Inc., and I do so. I verify that the responses are true to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 30, 2019

Leon Chen

30

## **PROOF OF SERVICE**

I, Scott Lesowitz, an adult over 18 years of age, declare under penalty of perjury of the Laws of the United States that on August 30, 2019, I served the above "KYDIA INCORPORATED'S RESPONSES TO OBENTO LIMITED AND AMANDA CHAN'S FIRST SET OF INTERROGATORIES" on counsel for Obento Limited and Amanda Chan via e-mail to Jonathan L. Schwartz <jschwartz@goldbergsegalla.com> and Mason, Larry D. <lmason@goldbergsegalla.com>.

Dated: August 30, 2019                                    /s/ Scott Lesowitz

KYDIA INCORPORATED,

 an Illinois corporation,


                    Plaintiff,

v.

OBENTO LIMITED (d/b/a Chinese Menu
Online), a Hong Kong business entity; AMANDA
CHAN (a/k/a Tsz Mei Amanda Fulton Chan) (陈
子薇), an individual,

                    Defendants.

_____

OBENTO LIMITED

                    Counter-Plaintiff

v.

KYDIA INCORPORATED,

                    Counter-Defendant

CASE NO.  2:18-CV-01217-PP

JUDGE PAMELA PEPPER

## KYDIA INCORPORATED'S RESPONSES TO OBENTO LIMITED AND AMANDA CHAN'S FIRST SET OF REQUESTS FOR PRODUCTION

Kydia Incorporated ("Kydia") hereby responds to Obento Limited ("Obento") and

Amanda Chan's First Set of Requests for Production of Documents. Kydia will not produce any

documents protected by any privilege or the attorney work-product doctrine. Kydia incorporates

into each response below a general objection to the request to the extent that it seeks documents

or information protected by the attorney-client privilege, any other privilege, or the attorney

1

work-product doctrine.

NOTE: Kydia objects to each and every Request to the degree that it seeks audio recordings. Kydia objects on the grounds of the rights of privacy, including of non-parties to this action who were on phone calls.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 1:**

IOO's customer list, as it existed in August or September 2015, as referenced throughout Your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 1:**

Kydia will produce copies of responsive documents. (See Kydia 0001-0068)

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 2:**

Communications and Related Documents referencing the termination of Xie or Chan's employment with IOO or You.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 2:**

Neither Kydia nor IOO terminated Xie or Chan's employment. Rather Xie and Chan left their employment. Therefore, there are no responsive documents within Kydia's possession, custody, or control.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 3:**

2015 or 2016 Communications and Related Documents referencing Chan's creation of Obento.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 3:**

Kydia will produce copies of responsive documents. (See Kydia 0077-0084)

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 4:**

Communications and Related Documents referencing Chan, Xie, or Obento acquiring or

2

misappropriation of IOO's trade secrets, including its customer list, commission and business structures, statistics on customers, market projections or menu data.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 4:**

Kydia objects to the Request on the grounds that it is vague, ambiguous, and unintelligible. Kydia objects that the request seeks documents that are irrelevant, that the request seeks documents the discovery of which would not be reasonably likely to lead to the discovery of admissible evidence, and that the request exceeds the bounds of the scope of permissible discovery. Kydia objects on the grounds of proportionality to the extent that the time, expense, and burden imposed would not be justified in comparison to any minimal relevance or minimal value of the documents produced.

Subject to the objections, Kydia will produce copies of responsive documents per its reasonable understanding of the request. (See Kydia 0077-0084)

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 5:**

Communications and Related Documents referencing IOO's protocols, policies, procedures, or guidelines for accessing or securing its customer list, including commission amounts and history, customer rating scores, proposed business deals, market projections, and menu data.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 5:**

Kydia will produce copies of responsive documents. (See Kydia 0077-0078) Please note that Kydia had Amanda Chan sign a confidentiality agreement. Even though IOO/Kydia did not have formal companywide protocols, guidelines, and procedures for securing the customer lists to IOO's freelance employees, they would clearly know from how their work was done, the nature of the work they did, how the customer list and information were treated,

how they were told to do their work and treat information, and from common sense and general business practice that all employees were required to protect the customer list (and other trade secrets) and could not use it or disclose it except for the benefit of Kydia in their employment.**REQUEST FOR PRODUCTION OF DOCUMENT NO. 6:**

Communications and Related Documents referencing Chan's Work for Hire Agreement with IOO.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 6:**

Kydia objects to the Request on the grounds that it is vague, ambiguous, and unintelligible. Kydia objects that the request seeks documents that are irrelevant, that the request seeks documents the discovery of which would not be reasonably likely to lead to the discovery of admissible evidence, and that the request exceeds the bounds of the scope of permissible discovery. Kydia objects on the grounds of proportionality to the extent that the time, expense, and burden imposed would not be justified in comparison to any minimal relevance or minimal value of the documents produced. The request focuses on an agreement that is undisputed Amanda Chan executed. Kydia is unaware of any documents other than the agreement itself that would be relevant.

Subject to the objections, Kydia will produce a copy of the agreement. (See Kydia 0077-0078)

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 7:**

The agreement by which You acquired IOO.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 7:**

Kydia objects to the Request to the extent that the agreement is confidential, and Kydia cannot produce an un-redacted copy. Kydia objects that the vast majority of the terms of the

4

agreement are irrelevant, and the disclosure of them would not reasonably be likely to lead to the discovery of admissible evidence. Beyond establishing that Kydia really did acquire IOO, the terms are irrelevant.

Subject to the objections, Kydia will produce pertinent portions of the agreement. (See Kydia 0069-0071)

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 8:**

Communications between Google and You referencing a complaint by a Chinese Food Restaurant to Google about You between 2016 and present.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 8:**

Kydia objects that the request seeks documents that are irrelevant, that the request seeks documents the discovery of which would not be reasonably likely to lead to the discovery of admissible evidence, and that the request exceeds the bounds of the scope of permissible discovery. Kydia objects on the grounds of proportionality to the extent that the time, expense, and burden imposed would not be justified in comparison to any minimal relevance or minimal value of the documents produced.

Kydia objects to the lack of specificity regarding the use of the word "complaint," which can encompass any type of expression of unhappiness with Kydia regardless of the nature of the subject or communication. Kydia's actions regarding restaurants that were never Obento customers are irrelevant and not at issue. Furthermore, Defendants are not Google and are not in privity with Google and do not have standing to raise claims of Google. Defendants are attempting to improperly sully Kydia in connection with Google, and this is harassing and not reasonably likely to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 9:**

5

Communications and Related Documents referencing complaints made by a Chinese Food Restaurant about Your services whose GMB listing Obento then or previously managed or controlled.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 9:**

Kydia objects that the request seeks documents that are irrelevant, that the request seeks documents the discovery of which would not be reasonably likely to lead to the discovery of admissible evidence, and that the request exceeds the bounds of the scope of permissible discovery. Kydia objects on the grounds of proportionality to the extent that the time, expense, and burden imposed would not be justified in comparison to any minimal relevance or minimal value of the documents produced.

Kydia objects to the lack of specificity regarding the use of the word "complaints," which can encompass any type of expression of unhappiness with Kydia regardless of the nature of the subject or communication.

This Request assumes that Kydia has more information reasonably available to it than it does. Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or management control over. As is generally the case, Google would not inform Kydia who controls a GMB listing that Kydia does not control, and Google would not be obligated to do so.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 10:**

Communications and Related Documents comparing the services provided by You and Obento to their respective customers.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 10:**

6

Kydia objects that the request is vague, ambiguous, and unclear. Kydia does not believe it has any such documents.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 11:**

Communications and Related Documents from Your customers to You referencing the services provided or solicitations by Obento.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 11:**

Kydia objects that the request is vague, ambiguous, and unclear, and the compound nature of the Request makes it especially difficult to understand and comply with. Kydia objects that the scope of the Request is overbroad.

Subject to the objections, Kydia will produce copies of responsive documents. (See Kydia 0072-0076)

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 12:**

Communications and Related Documents between You and anyone other than Obento or a current or potential restaurant customer, and made between 2016 and Present, contesting, challenging, or disputing Your authorization to manage or control a customer's GMB listings.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 12:**

Kydia objects that the request seeks documents that are irrelevant, that the request seeks documents the discovery of which would not be reasonably likely to lead to the discovery of admissible evidence, and that the request exceeds the bounds of the scope of permissible discovery. Kydia objects on the grounds of proportionality to the extent that the time, expense, and burden imposed would not be justified in comparison to any minimal relevance or minimal value of the documents produced.

Kydia objects that the Request is vague, ambiguous, and incomprehensible.

Kydia's conduct regarding restaurants unconnected to Obento are not at issue and irrelevant.

Kydia must go through the restaurant to obtain authorization and go through the Google technical procedures, and this is not in dispute. (Obento could bypass this with the Corpuz GMB transfers only because Obento had access to Corpuz who was a Kydia insider with access to the Kydia-controlled accounts.) As is generally the case, Google would not inform Kydia who controls a GMB listing that Kydia does not control, and Google would not be obligated to do so. Defendants misunderstand Kydia's actions. If an account that Kydia is supposed to be in control of falls under the control of another third-party, Kydia will attempt to reobtain control by contacting the restaurant. Kydia does call Google and seek advice for any technical issues that Kydia may encounter. Kydia does not track such calls and results. A restaurant's GMB listing ownership is assigned to the business owner or a third-party agent by following Google GMB claiming procedures.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 13:**

All documents referencing Obento's management or control of restaurants' GMB listings. This includes, but is not limited to, communications with GoDaddy.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 13:**

Kydia objects that the request seeks documents that are irrelevant, that the request seeks documents the discovery of which would not be reasonably likely to lead to the discovery of admissible evidence, and that the request exceeds the bounds of the scope of permissible discovery. Kydia objects on the grounds of proportionality to the extent that the time, expense, and burden imposed would not be justified in comparison to any minimal relevance or minimal value of the documents produced.

8

Kydia does not understand if the reference to "GoDaddy" is intentional.

Kydia does not have the requested documents in its possession, custody, or control.
Kydia does not issue complaints to Google about Obento control of a GMB listing. Kydia must
go through the restaurant to obtain authorization and go through the Google technical
procedures, and this is not in dispute. (Obento could bypass this with the Corpuz GMB transfers
only because Obento had access to Corpuz who was a Kydia insider with access to the Kydia-
controlled accounts.) As is generally the case, Google would not inform Kydia who controls a
GMB listing that Kydia does not control, and Google would not be obligated to do so.
Defendants misunderstand Kydia's actions. If an account that Kydia is supposed to be in control
of falls under the control of another third-party, Kydia will attempt to reobtain control by
contacting the restaurant. Kydia does call Google and seek advice for any technical issues that
Kydia may encounter. Kydia does not track such calls and results. A restaurant's GMB listing
ownership is assigned to the business owner or a third-party agent by following Google GMB
claiming procedures.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 14:**

Communications and Related Documents referencing Chinese Food Restaurants whose
online food orders Obento then or previously serviced, although Obento did not manage or
control their GMB listing.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 14:**

Kydia objects that the request seeks documents that are irrelevant, that the request seeks
documents the discovery of which would not be reasonably likely to lead to the discovery of
admissible evidence, and that the request exceeds the bounds of the scope of permissible
discovery. Kydia objects on the grounds of proportionality to the extent that the time, expense,

9

and burden imposed would not be justified in comparison to any minimal relevance or minimal value of the documents produced.

Kydia objects that the Request is vague, ambiguous, and incomprehensible.

This Request assumes that Kydia has more information reasonably available to it than it does. Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list of restaurants that Obento had or has GMB ownership or management control over. As is generally the case, Google would not inform Kydia who controls a GMB listing that Kydia does not control, and Google would not be obligated to do so.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 15:**

Communications and Related Documents, between 2016 and Present, referencing Your compliance with Google's Terms and Conditions pertaining to GMB listings.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 15:**

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden.

Kydia contends that it has consistently followed Google's terms of services. However, Kydia's compliance with Google's terms and conditions pertaining to GMB listings is not at issue in this case. Defendants do not have standing to raise claims related to Kydia's compliance with an agreement between Kydia and Google.

Furthermore, Kydia's actions and communications relating to restaurants that did not do business with Obento are irrelevant to this action and are not at issue.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 16:**

Communications and Related Documents between You and Google between 2017 and present requesting a Chinese Food Restaurant's login or password for the restaurant's GMB listing or management, ownership, or control for that Chinese Food Restaurant's GMB listing. This includes audio recordings of calls made to Google and transcripts of chats with Google.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 16:**

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden.

Kydia objects that the request is vague and ambiguous.

Whatever minor relevance there could possibly be for receiving every single communication between Kydia and Google in which a login or password is requested is substantially outweighed with the burden of the request. The documents would all or virtually all have no use in this case. Furthermore, Kydia's actions and communications relating to restaurants that did not do business with Obento are irrelevant to this action and are not at issue.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 17:**

Communications and Related Documents between You and Your Chinese Food Restaurant customers, and made between 2016 and Present, referencing Your being authorized to manage or control the customers' GMB listings. This includes audio recordings of calls made to the customers and transcripts of chats with the customers.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 17:**

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden.

11

The request is grossly overbroad. It is unreasonable to expect Kydia to search and analyze all communications with all its customers from 2016 through the present. Especially for audio recordings, this would be wholly impracticable in terms of time and resources. Obento is reversing the burden of proof on its claims and is confusing what is at issue in its claims.

Kydia's actions and communications relating to restaurants that did not do business with Obento are irrelevant to this action and are not at issue.

Furthermore, Defendants are not Google and are not in privity with Google and do not have standing to raise claims of Google. Defendants are attempting to improperly sully Kydia in connection with Google, and this is harassing and not reasonably likely to lead to the discovery of admissible evidence.

The Request would be unduly burdensome and impracticable to comply with logistically, technically, and in terms of time.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 18:**

Communications and Related Documents referencing how to successfully achieve the transfer of restaurants' GMB listings to You or how You can gain control or management over restaurants' GMB listings.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 18:**

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden.

Kydia objects that the Request is vague, ambiguous, and confusing.

The details on how to transfer GMB listings are available from Google's website. Defendants are asking Kydia to interpret Google's terms and conditions and procedures

12

pertaining to GMB listings, which is already available from Google's GMB related websites. Any confusion can also be resolved by reading Google's GMB policies or calling Google's support line for clarification. Kydia objects that the requested documents are equally accessible to Defendants.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 19:**

All Documents supporting or undermining Your request for economic, financial, or reputational damages suffered as a result of Obento's conduct giving rise to Your Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 19:**

Kydia objects to this information because it seeks information protected from disclosure as attorney work product. Kydia objects to this request insofar as it seeks Kydia's legal reasoning and analysis of each such document. Kydia objects that the request is overly broad and too undefined. Kydia objects that a request of all documents "undermining" the claims is vague, ambiguous, and unclear. Kydia objects that it is ambiguous whether the Request refers only to a justification for the amount of damages requested or also the justification for why Obento is liable to pay any damages in the first place.

Subject to the objections, to the extent that this Request is seeking documents related to the pursuit of claims for damages by Kydia, such that Federal Rule of Civil Procedure 34(a)(1)(A)(ii) is implicated, Kydia will produce responsive documents. Regarding the amount of damages, Kydia objects that the Request is premature, discovery is ongoing, and Defendants are exclusively in possession with certain information. (See Kydia 0001-0110)

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 20:**

Communications and Related Documents regarding Obento or Chan pretending to be from or associated with You.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 20:**

Kydia objects to the extent that the Request is overbroad and seeks documents that are irrelevant and would not be reasonably likely to lead to the discovery of admissible evidence.

Subject to the objections, Kydia will produce responsive documents. (See Kydia 0085-0110)

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 21:**

Communications and Related Documents regarding Obento or Chan spreading false information about You.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 21:**

Kydia objects to the extent that the Request is overbroad and seeks documents that are irrelevant and would not be reasonably likely to lead to the discovery of admissible evidence. Kydia objects on grounds of overbreadth and undue burden to the extent that the Request seeks documents within Defendants' possession, custody, or control that Defendant have not yet produced to Kydia. It is Defendants who posses the documents regarding "Obento or Chan spreading false information about [Kydia.]"

In Paragraphs 47 and 48 of Kydia's Complaint, Kydia provided concrete examples as displayed in Exhibit 2, 3, & 4. For Exhibit 2 and 3, those faxes were clearly sent from ChineseMenuOnline. Defendants are in possession of the many such FAX, emails or WeChat that had been spread to many of Kydia's current, past and potential customers, and Kydia has asked defendants to provide such documents and to provide information regarding when, where, and how many such documents have been sent out.

Subject to the objections, Kydia will produce responsive documents. (See Kydia 0072-0076)

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 22:**

Communications and Related Documents referencing Corpuz' transfer of GMB listings to Obento. This includes resecuring or repairing Your computer systems or networks, recreating corrupted or insecure data, and rebuilding of computer files.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 22:**

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden. Kydia objects that it is undisputed that Corpuz transferred GMB listings to Obento, and there is no reason to burden Kydia with proving an undisputed fact.

Kydia objects on the grounds of burden and trade secret protection.

After Corpuz was caught transferring Kydia's GMB accounts, Kydia disabled Corpuz and other suspected employees' login accounts. The detailed technical steps are company business secrets that cannot be revealed, and it is not related to this discovery.

Subject to the objections, to the extent that this Request is seeking documents related to the pursuit of claims for damages by Kydia, such that Federal Rule of Civil Procedure 34(a)(1)(A)(ii) is implicated, Kydia will produce responsive documents. (See Declaration of Fan Li filed with the motion for preliminary injunction)

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 23:**

Communications and Related Documents between You and a restaurant, control of whose GMB listing was transferred by Corpuz to Obento in 2017 or 2018, following the transfer and requesting that the restaurant agree to Your control or management of its GMB listing.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 23:**

Kydia objects that there is a lack of proportionality, relevance, and discoverability under Federal Rule of Civil Procedure 26(b)(1). Kydia objects on the grounds of overbreadth and undue burden. Kydia objects that Defendants are confusing the issues and attempting to transfer the burden of proof.

Kydia objects that the request is vague, ambiguous, and incomprehensible.

Kydia does not have such documents to produce.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 24:**

Communications and Related Documents referencing Corpuz' transfer of Your customer list to Obento.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 24:**

Kydia does not have such documents to produce.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 25:**

Personnel or employment files or records for each person who worked for You outside the United States and who may have had communications with Google about a restaurant whose GMB listing Obento managed at any time.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 25:**

Kydia objects on the grounds of relevance and that the request goes outside of the scope of permissible discovery and is unduly burdensome and not proportional. Kydia objects that "personnel or employment files or records" have no relation to this case and objects on the grounds of the privacy of the affected individuals.

This Request assumes that Kydia has more information reasonably available to it than it does. Kydia did not know, does not know, and cannot learn without information being provided to Kydia, when and how Obento started managing particular restaurants' GMB listings or the list

of restaurants that Obento had or has GMB ownership or management control over. As is generally the case, Google would not inform Kydia who controls a GMB listing that Kydia does not control, and Google would not be obligated to do so.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 26**:

All documents referenced in Section 2. Of Your Initial Disclosures.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 26**:

Kydia will comply with Federal Rule of Civil Procedure 34(a)(1)(A)(ii) and produce responsive documents.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 27**:

Any and all documents and tangible things you intend to move into evidence at the trial of this matter.

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENT NO. 27**:

Kydia objects that this Request is premature. Kydia will comply with Federal Rule of Civil Procedure 34(a)(1)(A)(ii) and the Federal Rules of Evidence.


DATED:  August 30, 2019          Respectfully submitted,

   /s/ *Scott M. Lesowitz*
Scott M. Lesowitz
California Bar Number: 261759
     (Fully admitted to the Eastern District of Wisconsin)
Syverson, Lesowitz & Gebelin LLP
8383 Wilshire Boulevard, Suite 520
Beverly Hills, California 90211
Phone: 310-341-3076
Fax: 310-341-3070
E-mail: scott@syversonlaw.com
Attorneys for Plaintiff
Kydia Incorporated

17

**PROOF OF SERVICE**

I, Scott Lesowitz, an adult over 18 years of age, declare under penalty of perjury of the Laws of the United States that on August 30, 2019, I served the above "KYDIA INCORPORATED'S RESPONSES TO OBENTO LIMITED AND AMANDA CHAN'S FIRST SET OF REQUESTS FOR PRODUCTION" on counsel for Obento Limited and Amanda Chan via e-mail to Jonathan L. Schwartz <jschwartz@goldbergsegalla.com> and Mason, Larry D. <lmason@goldbergsegalla.com>.

Dated: August 30, 2019                    /s/ Scott Lesowitz

18